**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 09-cv-01767-CMA-KLM

TRIPOLI MANAGEMENT, LLC,
      d/b/a DWIRE EARTHMOVING & EXCAVATING,

      Plaintiff,

v.

WASTE CONNECTIONS OF KANSAS, INC.,

      Defendant.

---

### AMENDED ORDER REGARDING DEFENDANT'S MOTION TO DISMISS

---

This Amended Order replaces the Order dated March 2, 2010 (Doc. # 25).

This is a contract dispute. The matter is before the Court on Defendant's motion to dismiss for lack of personal jurisdiction. *(See* Doc. # 7, citing Fed. R. Civ. P. 12(b)(2).) The motion is ripe for ruling.

## I. BACKGROUND

### A.   <u>INTRODUCTION</u>

Plaintiff is a Colorado-based earthmoving and excavation company. Defendant is a Kansas-based waste removal and recycling company. On February 26, 2009, the parties entered into a contract pursuant to which Plaintiff would provide earthwork on Defendant's landfill in Kansas in exchange for payment of more than $1 million. (Doc. # 1-3, ¶ 1; Doc. # 1-4, ¶¶ 2, 3.)

Plaintiff contends it performed its obligations under the contract but Defendant did not. (*Id.*, ¶¶ 5-7.) Accordingly, on July 9, 2009, Plaintiff filed an amended complaint in Colorado state court alleging three claims against Defendant: breach of contract, promissory estoppel, and unjust enrichment. On July 27, 2009, Defendant filed a timely Notice of Removal in this Court, alleging complete diversity and an amount-in-controversy over $75,000. (*See* Doc. # 1.) On August 3, 2009, Defendant filed the at-issue motion to dismiss, arguing the Court lacks personal jurisdiction over it. (Doc. # 7.)

The question before the Court is whether Defendant has sufficient "minimum contacts"[1] in Colorado for the Court to exercise jurisdiction over it without running afoul of the Due Process Clause.[2] The following facts are a summary of those "minimum contacts," as alleged by Plaintiff in its complaint and a supporting affidavit. Given the procedural posture, the Court takes as true all well-pled facts in Plaintiff's complaint and, as to the parties' opposing affidavits, resolves all factual disputes in Plaintiff's favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted).

---

[1] "Contacts" include acts physically performed in the forum state and acts performed outside the forum state that have an effect within the forum. 16 *Moore's Federal Practice*, § 108.42 (Matthew Bender 3d ed.)

[2] U.S. Const. amend. XIV, § 1. The Due Process Clause of the Fourteenth and not Fifth Amendment applies because jurisdiction was conferred on the basis of Colorado's long-arm statute. *See Cory v. Aztec Steel Building., Inc.*, 468 F.3d 1226, 1229, 1232-33 (10th Cir. 2006) ("the Fourteenth Amendment governs application of a state's long-arm statute.").

**B.    JURISDICTIONAL FACTS**

Plaintiff avers that Defendant maintains an office in Centennial, Colorado. Although this office is "nominally associated" with Waste Connections Inc., Defendant's parent company, Plaintiff contends that "as a practical matter" Defendant itself conducts business through its employees at the Colorado office, including Brian Karp, the Central Region Engineer.  (Doc. # 12-2, ¶¶ 2, 3.)

Plaintiff also contends (1) that Defendant administered the contract through its employees or agents at the Colorado office; (2) that Defendant regularly initiated communications with Plaintiff through e-mails and telephone calls originating from its Colorado office; and (3) that Defendant received numerous communications from Plaintiff in its Colorado office.  In particular, Plaintiff cites a series of e-mails between itself and Mr. Karp, dating from February 19, 2009 to June 3, 2009, in which they discuss the contract.  (*Id.*, ¶¶ 3, 4, 7).

In addition, Plaintiff asserts the contract was "negotiated" in Colorado and that, afterward, Defendant directed Plaintiff to execute the contract and mail it to Defendant's Colorado office.  Defendant's agents also met with Plaintiff's agents several times in Colorado.  (*Id.*, ¶ 5; Doc. # 1-3, ¶¶ 4.d and 4.f.)

Plaintiff also avers that it submitted all of its fundamental contract paperwork to Defendant at its Colorado office, including payment applications, change orders, and similar documents.  And in at least one of the contract documents issued by Defendant, Defendant identified itself using a Colorado address: "Waste Connections of Kansas,

Inc., 6855 S. Havana St., Suite 300, Centennial, Colorado 80112." Finally, Defendant's

performance obligations under the contract (to pay Plaintiff) were due in Colorado.

(Doc. # 12-2, ¶¶ 7, 8.)

## II. DISCUSSION

## A.     STANDARD OF REVIEW – RULE 12(b)(2) MOTION TO DISMISS

Plaintiff has the burden to establish the Court's personal jurisdiction over

Defendant. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th

Cir. 2008) (citation omitted). Given the procedural posture, that burden is light.

> Where a district court considers a pre-trial motion to dismiss for lack of
> personal jurisdiction without conducting an evidentiary hearing, the plaintiff
> need only make a prima facie showing of personal jurisdiction to defeat
> the motion. The plaintiff may make this prima facie showing by
> demonstrating, via affidavit or other written materials, facts that if true
> would support jurisdiction over the defendant.

*AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir.

2008) (citations and internal quotation marks omitted).

As mentioned, in resolving this motion the Court accepts as true all well-pled, *i.e.*,

non-conclusory and non-speculative, facts alleged in Plaintiff's complaint. *Dudnikov*,

514 F.3d at 1070. The parties have each submitted supporting affidavits. If the parties'

affidavits conflict, the conflicts "must be resolved in the plaintiff's favor, and the plaintiff's

prima facie showing is sufficient notwithstanding the contrary presentation by the

moving party." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)(citation

omitted). If Plaintiff satisfies its prima facie burden, Defendant "must present a

compelling case demonstrating 'that the presence of some other considerations would

render jurisdiction unreasonable.'" *OMI Holdings v. Royal Ins. Co. of Canada,* 149 F.3d

1086, 1091 (quoting *Burger King Corp. v. Rudzewica*, 471 U.S. 462, 477 (1984)).

## B.    ANALYSIS – WHETHER THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT.

To obtain personal jurisdiction over a nonresident defendant in a diversity action,

a plaintiff must show (1) that jurisdiction is legitimate under the laws of the forum state,

and (2) that the exercise of jurisdiction does not offend the due process clause. *Soma*

*Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (citation

omitted).

In Colorado, this two-pronged inquiry collapses into one, because "'Colorado's

long arm statute is coextensive with constitutional limitations imposed by the due

process clause.  Therefore, if jurisdiction is consistent with the due process clause,

Colorado's long arm statute authorizes jurisdiction over a nonresident defendant.'"

*Grynberg v. Ivanhoe Energy, Inc.*, No. 08-cv-02528, --- F.Supp.2d ----, 2009 WL

3217394, *6 (D. Colo. September 30, 2009) (quoting *Benton v. Cameco Corp.*, 375 F.3d

1070, 1075 (10th Cir. 2004)).  Thus, the Court asks whether the exercise of personal

jurisdiction over Defendant comports with due process.

This is a two-step inquiry.  At step one, the Court examines "whether the

non-resident defendant has 'minimum contacts' with the forum state such that he should

reasonably anticipate being haled into court there." *Melea, Ltd. v. Jawer SA*, 511 F.3d

1060, 1065 (10th Cir. 2007) (quoting *TH Agriculture & Nutrition, LLC v. Ace European*

*Group Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007)).  If the Court finds that Defendant has

sufficient minimum contacts with Colorado, the Court will then ask "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice', that is, whether the exercise of jurisdiction is 'reasonable' under the circumstances." *Id.* (quoting *TH Agriculture & Nutrition, LLC*, 488 F.3d at 1287)).

The Court thus begins by asking whether Defendant has sufficient minimum contacts with Colorado. This inquiry turns on: (1) whether Defendant "purposefully directed" its activities at Colorado, and if so, (2) whether Plaintiff's injuries arose out of or resulted from those activities, *i.e.*, whether a sufficient "nexus" exists Defendant's forum-related contacts and Plaintiff's causes of action. *See TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1287, 1291 (10th Cir. 2007).[3]

      1.    Whether Defendant "Purposefully Directed" Its Activities At Colorado.

In contract cases, the first element of the "minimum contacts" test is often phrased as asking whether the defendant "purposefully availed" itself of the privilege of conducting activities or consummating a transaction in the forum state. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). "[T]he purposeful availment requirement . . . ensures that a defendant will not be subject to the

---

[3] The Court's inquiry is limited to the question of specific personal jurisdiction. Although "a court may maintain general jurisdiction . . . based on the defendant's continuous and systematic general business contacts with the forum state[,]" *Trujillo v. Williams*, 465 F.3d 1210, 1218 n. 7 (10th Cir. 2006), nothing in Plaintiff's complaint nor Mr. Spinuzzi's affidavit suggests that Defendant engaged in systematic and continuous activity in Colorado. Accordingly, the Court concludes that general personal jurisdiction is lacking. *Also see Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078-79 (10th Cir. 2008) (discussing distinction between specific and general jurisdiction).

laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *AST Sports Science, Inc. v. CLF Distribution Limited.*, 514 F.3d 1054, 1058 (10th Cir. 2008) (internal citation and quotation marks omitted).

In this case, there is no disputing that Defendant contracted with Plaintiff, a Colorado Limited Liability Company with its principal place of business in Colorado Springs, Colorado. (Doc. # 1-3, ¶ 1.). However, as a general rule, "[a]n individual's contract with an out-of-state party cannot, standing alone, establish sufficient minimum contacts with the forum state." *See TH Agric. & Nutrition, LLC*, 488 F.3d at 1287.

"To determine whether a nonresident defendant has purposefully established minimum contacts with the forum state by contracting with another party, a court must examine prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* (internal citations and quotation marks omitted). Although these factors largely overlap, to sharpen its inquiry the Court considers each of them separately.

        a.     *Prior Negotiations*

First, as to prior negotiations, the parties had none before the events leading to the at-issue contract. (Doc. # 7 at 2.) The District Manager for Defendant asserts in his declaration that the invitation to bid was submitted from Kansas to four contractors located in four different states. (Doc. # 7-3, ¶ 8.) Plaintiff, of course, was one of these.

But there is no indication from Plaintiff that there was ever a prior relationship between the parties.

In contrast, consider the Tenth Circuit's treatment of another contract case: *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004). In *Benton*, the court found that the out-of-state defendant's contacts with Colorado were sufficient to allow the Colorado federal courts to exercise jurisdiction over the defendant.[4] The *Benton* court, however, cited a feature of the parties' business relationship that is absent from this case. In *Benton*, unlike here, the "prior negotiations and the contemplated future consequences of the [contract] centered around the *continuing business relationship* between [the defendant] and [the plaintiff]." *Id.* (emphasis added). The *Benton* defendant had been conducting business with the *Benton* plaintiff, a Colorado resident, for at least eight years prior to negotiating the at-issue contract. *Id.* at 1073, 1078.

Here, as mentioned, the parties did not have a relationship prior to the negotiations leading to the at-issue contract. Accordingly, this factor suggests that Defendant did not purposefully avail itself of the privilege of conducting activities in Colorado.

> *b.*     *Contemplated Future Consequences*

As to contemplated future consequences, several facts suggest the appropriate forum for this case is not Colorado, but rather Kansas. First, the contract itself. It states

---

[4] Even so, the *Benton* court noted that "[t]he facts of this case place it in the grey area of personal jurisdiction analysis." *Benton*, 375 F.3d at 1076-77.

that it is to be "governed by the law of the state in which the Project is located."  (Doc. # 7-2 at 5.)  That state is Kansas, not Colorado.  And it is undisputed that Plaintiff was hired by a Kansas firm to perform work in Kansas, not Colorado.  (Doc. # 7-3, ¶ 13; Doc. # 12 at 1.)  Finally, as mentioned above, the lack of a "continuing business relationship" between the parties suggests that Defendant did not purposefully avail itself of the privilege of conducting activities in Colorado.

### c.  Terms of the Contract

As to the terms of the contract, the Court has already covered this factor to some extent.  Again, the contract called for work to be done in Kansas and that, in the event of a dispute, Kansas law would govern.[5]  Plaintiff argues that Defendant's payment obligations under the contract were due in Colorado.  (Doc. # 12, ¶ 8.)  The contract, however, does not specify where payment should be sent.  (*See* Doc. # 13-3, § 14.) The Court finds that, at most, Plaintiff can claim that the contract required payment be made to Plaintiff and that Plaintiff happened to be located in Colorado.  This is an attenuated contact and thus incapable of supporting Plaintiff's burden.[6]  Accordingly, this factor also favors Defendant.

---

[5]  (Doc. # 7-2 at 5; Doc. # 13-5 at 2; Doc. # 13-2.)

[6]  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985);  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984).

*d.     The Parties' Actual Course of Dealing*

Finally, as to the parties' actual course of dealing, the Court considers first, where the contract was "negotiated," and second, where – and by whom – it was "administered."

Plaintiff asserts in its complaint that the contract was "negotiated"[7] in Colorado. (Doc. # 1-3, ¶ 4d.)  In support of its allegations, Plaintiff submitted the affidavit of one of its former employees, Frank Spinuzzi.  (*See* Doc. #12-2; Doc. # 22, ¶ C .)  His affidavit, however, makes no reference to the contract being "negotiated" in Colorado.  Thus, the only documentary evidence in support of the notion that the contract was "negotiated" in Colorado is a one-sentence assertion in Plaintiff's complaint.  And while it is generally true that the Court should accept as true the allegations in a plaintiff's complaint, "only the well pled facts . . . , as distinguished from mere conclusory allegations, must be accepted as true."  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted).  The Court finds Plaintiff's allegation that the contact was "negotiated" in Colorado to be conclusory.[8]  Plaintiff never explains nor revisits this

---

[7]   "Negotiate" means "[t]o communicate with another party for the purpose of reaching an understanding <they negotiated with their counterparts for weeks on end>. 2. To bring about by discussion or bargaining . . ." *Black's Law Dictionar*y (8th ed. 2004).

[8]   "Conclusory" means "[e]xpressing a factual inference without stating the underlying facts on which the inference is based <because the plaintiff's allegations lacked any supporting evidence, they were merely conclusory>." *Id.*

assertion, despite the opportunity afforded by Mr. Spinuzzi's affidavit and its response to

Defendant's motion. Accordingly, the Court considers it not a "well-pled fact."[9]

---

[9] The Tenth Circuit has used the word "plausible" in defining "well-pled fact," writing that "[w]hen, as here, personal jurisdiction is found wanting on the basis of the complaint and affidavits, our review of the district court's dismissal is de novo, taking as true all well-pled (that is, plausible, non-conclusory, and non-speculative, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)) facts alleged in plaintiffs' complaint." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Court has some concerns about employing the word "plausible" in its analysis of the instant motion filed pursuant to Rule 12(b)(2).
        First, as shown above, the *Dudnikov* court cited to the Supreme Court's *Twombly* decision in reciting the word "plausible." *Twombly* announced a new standard – later developed by *Ashcroft v. Iqbal* – by which courts should evaluate the sufficiency of a complaint under Fed. R. Civ. P. 8(a)(2) and its corollary, Fed. R. Civ. P. 12(b)(6). *See Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949-51 (2009). Rule 8(a)(2) requires that a plaintiff's complaint provide a "short and plain statement of the requested relief." Rule 12(b)(6) allows a defendant to move to dismiss that complaint if the plaintiff has failed to satisfy its Rule 8(a)(2) burden, *i.e.*, failed to state a claim upon which relief can be granted. *See Twombly*, 550 U.S. at 555-57 and *Iqbal,* 129 S.Ct. at 1949-51. In the 12(b)(6) world, courts are required to assume the truth of the well-pled, *i.e.*, non-conclusory, facts in the complaint and determine whether those well-pled facts "plausibly" state a claim, *i.e.*, present a factual scenario that "plausibly" violates the law. *See id.* But it is not clear that the same analysis applies in the 12(b)(2) context. The Supreme Court has not explicitly addressed this issue and this Court is wary of expanding the *Iqbal/Twombly* standard to motions filed under 12(b)(2). The Court notes that the corollary for Rule 12(b)(2) is not Rule 8(a)(2) but rather Rule 8(a)(1), which states that a pleading must contain "a short and plain statement of the grounds for the court's jurisdiction . . . ." Fed. R. Civ. P. 8(a)(1). That suggests the analysis required under Rule 12(b)(2) is distinct from the analysis under Rule 12(b)(6), though the Court also notes that in *Iqbal* the Supreme Court at times spoke expansively in terms of Rule 8 generally. See *Iqbal*, 129 S.Ct. at 1953. However, assuming *arguendo* that the "plausibility" standard applies in the Rule 12(b)(2) world, the *Dudnikov* court's use of the word "plausible" misapplies that term as it is used in *Twombly*. Did the panel mean to ask, for example, that, assuming the truth of Plaintiff's allegations, is it "plausible" the Court has personal jurisdiction over the defendant? If so, that application resembles the one endorsed by the Supreme Court. But if that were the panel's intent, then it would undermine the way the panel actually used the word "plausible." Again, the *Dudnikov* court defined the term "well-pled fact" to mean, at least in part, a fact that is "plausible." *Dudnikov*, 514 F.3d at 1070. This definition cuts against a basic premise in the 12(b)(6) world–that well-pled, *i.e.*, non-conclusory, facts are assumed to be true. Whether those facts are plausible is not the question. Rather, the question is, assuming the truth of those facts, do they "plausibly" state a claim? For these reasons, the Court believes that the *Twombly/Iqbal* "plausibility" standard is limited to the Fed. R. Civ. P. 12(b)(6) setting and is inappropriate in a Fed. R. Civ. P. 12(b)(2) setting. Moreover, given that use of the "plausibility" standard would make no difference in this case and also given that the Tenth Circuit has only recited the word "plausible" without applying it in the Rule

But even if this assertion were a well-pled fact, Defendant's conflicting evidence is sufficient to rebut it. On the strength of its District Manager's declaration, Defendant asserts the parties actual course of dealing was centered in Kansas, not Colorado. (*See* Doc. # 7-3.) More specifically, the pre-bid meeting, the pre-construction meeting, periodic construction progress meetings and work all took place in Kansas. (*Id.*, ¶¶ 9, 14.) In addition, the invitation to bid was prepared and submitted from Kansas. (*Id.*, ¶ 8.) Given this evidence, the Court disregards Plaintiff's assertion that the contract was "negotiated" in Colorado.

Despite its failings highlighted above, Mr. Spinuzzi's affidavit does support some of Plaintiff's assertions regarding personal jurisdiction. He asserts in it, for instance, that the contract was "administered" by Defendant's employees in Colorado, though he mentions by name only Mr. Brian Karp. Mr. Karp works in Centennial, Colorado. Mr. Karp also went to lunch with one of Plaintiff's employees in Castle Rock, Colorado. Mr. Karp, however, is employed by Defendant's parent company, Waste Connections, Inc., not by Defendant. (Doc. # 13-4, ¶¶ 1-3.). Thus, Mr. Spinuzzi's allegation regarding Mr. Karp is irrelevant to the question of Defendant's contacts, unless Mr. Karp was acting as an agent for Defendant.

---

12(b)(2) context, the Court does not feel bound by the Tenth Circuit's turn of phrase in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008).

Plaintiff's position with regard to the issue of agency is unclear. Although Plaintiff does not say it outright, the Court infers that Plaintiff is seeking to impute the contacts of Mr. Karp to Defendant. Plaintiff writes that:

> Brian Karp, the Central Region Engineer, undertook action on a variety of contract matters. He defined the scope of [Plaintiff's] undertaking; he received change orders, acted on them, and communicated his decisions to [Plaintiff]; he received payment applications, reviewed them, and provided comments to [Plaintiff]; he received time extensions from [Plaintiff] and acted on them as well. He also met with [Plaintiff] in Colorado.

(Doc. # 12 at 9.)

Because personal jurisdiction requires a purposeful act by the defendant "itself," personal jurisdiction is not associational or derivative in nature. *See Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987). However, under Colorado's agency law[10], the contacts of an agent can be imputed to the principal for purposes of personal jurisdiction. *Goettman v. North Fork Valley Restaurant*, 176 P.3d 60, 67 (Colo. 2007).[11] In that situation, the agent is regarded as the defendant "itself."

---

[10]  Colorado agency law applies because the case was removed on the basis of diversity jurisdiction. *Federated Rural Electric Insurance Corporation v. Kootenai Electric Cooperative.*, 17 F.3d 1302, 1304 (10th Cir. 1994) ("The jurisdiction of a district court over a nonresident defendant in a suit based on diversity of citizenship is determined by the law of the forum state.").

[11]  *Also see Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55-60 (1st Cir. 2002) (agent's acts may be attributed to principal for jurisdictional purposes when, under standard agency principles, agent is authorized to act on behalf of principal or principal ratifies agent's conduct).

Assuming this is Plaintiff's theory,[12] it must first show that Mr. Karp was, in fact, Defendant's agent. An agency relationship can be based upon actual or apparent authority.

> Actual authority incorporates the concepts of express and implied authority. Express authority exists whenever the principal directly states that its agent has the authority to perform a particular act on the principal's behalf. Implied authority . . . embraces authority to do those acts which are incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent.

*Willey v. Mayer*, 876 P.2d 1260, 1264 (Colo. 1994) (citations and internal quotation marks omitted). Apparent authority, on the other hand, exists when the principal acts "in a manner that, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him. In such a case, the agent is said to have apparent authority." *Johnson v. Chilcott*, 658 F.Supp. 1213, 1219 (D. Colo. 1987) (citations and internal quotation marks omitted).

As to the foregoing exposition of agency law, Plaintiff makes no claim. Again, Plaintiff only suggests the idea that Mr. Karp is an agent of Defendant, without

---

[12]   Plaintiff's theory may also be that the contacts of Defendant's parent company should be imputed to Defendant. If that is Plaintiff's theory, its reliance on *Goettman v. North Fork Valley Restaurant*, 176 P.3d 60, 67 (Colo. 2007) does not help its cause. In *Goettman*, the Colorado Supreme Court found that an agent-employee's contacts with Colorado – involving a fatal car accident in which he was the driver – could be imputed to his out-of-state principal-employer, thus holding the principal-employer to account for the agent-employee's alleged offenses in Colorado. *See id.* This result is consistent with general principles of agency law, *i.e.*, that a principal should held responsible for the acts of its agent.

Plaintiff here would be seeking to do the opposite–imputing the contacts of the "principal," ostensibly Defendant's parent, to the "agent," ostensibly Defendant. But Plaintiff has not shown that Defendant should be held responsible for its parent's acts, *i.e.*, that the parent here was an agent for its subsidiary. Accordingly, to the extent Plaintiff is arguing that the contacts of Defendant's parent company should be imputed to Defendant, its argument fails.

developing the point. That will not do. Though light, Plaintiff does have a burden. It must allege facts in its complaint and, if jurisdiction is attacked, present argument in response, which allow the Court to reasonably infer that is has jurisdiction over Defendant.[13] As Colorado's Supreme Court has written, "[t]o establish this agency theory of personal jurisdiction under Colorado's long-arm statute, the jurisdictional facts must connect the actions of the agent to the principal . . . ." *Goettman v. North Fork Valley Restaurant*, 176 P.3d 60, 67 (Colo. 2007) (citing Colo. Rev. Stat. § 13-1-124). But, for the jurisdictional facts to connect the actions of the agent to the principal, a plaintiff should make plain the identity of the perceived agent and that of the principal. This is especially true when presenting a novel theory such as the one here – that the employee of a parent company is an agent for its subsidiary.[14]

Even assuming, however, that Mr. Karp was an agent for Defendant, the Court finds that the parties "actual course of dealing" – while showing that Defendant had contacts with Colorado – does not suggest that Defendant purposefully availed itself of the privilege of conducting activities in Colorado. As discussed, the focal point of the contract-related activities was Kansas, not Colorado. On balance, then – after examining the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing – the Court finds

---

[13] "Reasonable inference" refers to Plaintiff's prima facie burden. "A prima facie showing exists where the plaintiff raises a reasonable inference that the court has jurisdiction over the defendant." *Goettman v. North Fork Valley Restaurant*, 176 P.3d 60, 66 (Colo. 2007).

[14] On the question of agency, Defendant submitted a declaration by Mr. Karp, in which he denies having authority to contract on behalf of Defendant. (Doc. # 13-4, ¶¶ 3, 10.)

that Plaintiff has not satisfied its prima facie burden regarding the "purposeful availment" prong of the minimum contacts test.

Despite this finding, the Court will continue with the analysis to demonstrate that, even if Plaintiff had satisfied its burden at step one, the Court would still lack personal jurisdiction over Defendant because Plaintiff's alleged injuries did not arise out of or result from Defendant's Colorado-related contacts.

2. <u>Whether Plaintiff's Alleged injuries Arose Out Of Or Resulted From Defendant's Colorado-Related Contacts</u>.

Assuming *arguendo* that Defendant has purposefully availed itself of the privilege of conducting activities in Colorado, Plaintiff must still show there exists a nexus between those activities and Plaintiff's claims, i.e., that this lawsuit is based on injuries arising out of or relating to Defendant's Colorado-based activities. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *Beverly Kuenzle, Wayne Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996).

Plaintiff is suing Defendant on a breach of contract theory, asserting the parties entered into a contract in which Plaintiff provided earthwork on Defendant's Kansas landfill but was never paid for it. (Doc. # 1-3, ¶¶ 5-7.) From that general allegation, Plaintiff advances three claims: breach of contract, promissory estoppel, and unjust enrichment. *(Id.* at 4-5.)

As discussed above, the contract from which these claims arise was negotiated in Kansas, not Colorado. It was entered into on February 26, 2009. The pre-bid

meeting, the pre-construction meeting, periodic construction progress meetings and all

the work took place in Kansas.  Even assuming that Mr. Karp was Defendant's agent,

his contacts do not help Plaintiff.  The bulk of the e-mails from Mr. Karp were received

by Plaintiff after February 26, 2009, and, thus, after the contract was formed.  The lone

e-mail written by Mr. Karp before that date came in response to an inquiry by Plaintiff

and reveals nothing regarding contract negotiations.

> All,
> The material that is being excavated from the cell will be placed in the
> draw that is direct west of the cell (approx 0.25 mile haul at most) and will
> be used to create a haul road to access the cell.  The draw should hold
> the majority of the material and the remainder can be stockpiled.
>
> The site has a dedicated 3 Inch pump that the contractor can use for filling
> water towers. If additional pumps are needed, it would be at the expense
> of the contractor.

(Doc. # 12-2 at 6.)

Although Plaintiff alleges that Mr. Karp "received change orders" and "acted on

them," Plaintiff does not allege that Mr. Karp "acted on them" in a way that may have

modified the at-issue contract.  Nor is there an allegation that Mr. Karp promised

Plaintiff anything that could serve as the basis for its promissory estoppel claim or that

somehow he was unjustly enriched at the expense of Plaintiff.  In short, Plaintiff fails

to show that Mr. Karp's Colorado-based contacts are "substantially connected"

to Plaintiff's contract-related claims.  *See TH Agriculture & Nutrition, LLC v. Ace*

*European Group Ltd.*, 488 F.3d 1282, 1288 (10th Cir. 2007) ("[T]he contract relied

upon to establish minimum contacts must have a 'substantial connection' with the forum state.") (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

In conclusion, then, Plaintiff has failed to show, as it must,[15] that its claims – breach of contract, promissory estoppel, and unjust enrichment – arise out or relate to Defendant's contract-related activities in Colorado.  Instead, the focal point of Plaintiff's claims – the contract – is in Kansas, not Colorado.  Because Plaintiff has failed to raise a reasonable inference that Defendant has sufficient "minimum contacts" with Colorado, the Court need not consider the question whether, despite those contacts, exercising jurisdiction over Defendant would be reasonable.[16]  Before granting Defendant's motion to dismiss, however, the Court considers whether it should instead transfer the case to the United States District Court for the District of Kansas.

---

[15]  *See Trujillo v. Williams*, 465 F.3d 1210, 1218 (10th Cir. 2006).

[16]  *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009)("[I]f we find that there have been minimum contacts . . . the burden is on the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.  Such cases are rare.  Traditional notions of fair play and substantial justice are said to comprise five factors: the burden on the defendant, the forum state's interest in resolving the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental social policies.") (citations and internal quotation marks omitted).

**C.    ANALYSIS – WHETHER TRANSFER IS APPROPRIATE.**

Several statutory provisions allow this Court to transfer cases.[17]  The Court first considers 28 U.S.C. § 1404(a), which states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[18]  Section 1404(a) implies, however, that the Court has personal jurisdiction over Defendant.  But that is not the case here.  Thus, the Court instead focuses on 28 U.S.C. § 1631, which provides:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

Section 1631 applies in cases where either subject matter jurisdiction or personal jurisdiction is lacking.  *Trujillo v. Williams*, 465 F.3d 1210, 1222 n.15 (10th Cir. 2006).  Moreover, the Court has "considerable discretion in deciding whether a § 1631 transfer would be appropriate."  *United States v. Botefuhr*, 309 F.3d 1263, 1274 n. 8 (10th Cir.

---

[17]    In addition to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1631, see 28 U.S.C. § 1406 (a), which states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

[18]    The Court can do this *sua sponte.*  Section 1404(a) does not limit the Court's ability to act to those situations in which a party requests such action.  In contrast, consider section 1404(b), which allows a court to transfer a case from one division to another within district, but only  "[u]pon motion, consent or stipulation of all parties . . . ." 28 U.S.C. § 1404(b).  *Also see Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006) ("A court may *sua sponte* cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes . . . when it is in the interests of justice.").

2002) (citation omitted).  Because the Court finds it lacks personal jurisdiction over Defendant, it will not consider the case further.  Instead of dismissing the case, however, the Court believes that the interests of justice would best be served by transferring this case to an appropriate forum.

The parties do not dispute that the District of Kansas would be appropriate; indeed, it appears that court would have jurisdiction over both the case and these parties.  (*See* Doc. ## 21 and 22.)  With that idea in mind, on January 14, 2010, the Court issued an Order requiring the parties show cause why this case should not be transferred to the District of Kansas.  (Doc. # 20.)  The Court stated that although it had not yet decided Defendant's motion, "principles of judicial efficiency and economy" suggested to it that transferring the case to the United States District Court for the District of Kansas would be appropriate.  (*Id.*)  Plaintiff opposed such transfer.  (Doc. # 22.)  Defendant, on the other hand, responded that it "does not oppose the transfer and fully agrees with the Court that the principles of judicial efficiency and economy would best be served by transferring the case to the United States District Court for the District of Kansas."  (Doc. # 21 at 1.)  This statement supports the Court's view that transfer is more appropriate than dismissal.

Based on the foregoing, then, and pursuant to 28 U.S.C. § 1631, the Court finds that there is a "want of jurisdiction" in the District of Colorado and that this case could have been brought in the District of Kansas at the time it was filed here.  In the interests

of justice, the Court will exercise its "considerable discretion" and transfer the case to the United States District Court for the District of Kansas.

## III. CONCLUSION

Accordingly,

1.     The Court ORDERS that this case be transferred to the United States District Court for the District of Kansas.

2.     In light of that decision, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 7) is DENIED AS MOOT.

DATED:  March __09__, 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge